Haruvi v Hungerford (2024 NY Slip Op 50032(U))

[*1]

Haruvi v Hungerford

2024 NY Slip Op 50032(U)

Decided on January 16, 2024

Supreme Court, New York County

Borrok, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 16, 2024
Supreme Court, New York County

Michelle Haruvi, Plaintiff,

against
Peter Hungerford, ARTHUR HARUVI, 315W54 OWNER LLC, 311W54 OWNER LLC, 309W54 OWNER LLC, 313W54 OWNER LLC, 38W75 OWNER LLC, 244W74 OWNER LLC, 54W75 OWNER LLC, FS CREIT FINANCE HOLDINGS LLC, JOHN AND JANE DOES, SIMRY REALTY CORP., Defendant.

Index No. 651033/2023

Plaintiffs by:
GordonLaw LLP, 51 Bedford Road Suite 10, Katonah, NY 10536
Defendants by:
GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP, 1501 Broadway Fl 22nd, New York, NY 10036
Cole Schotz P.C., 1325 Avenue Of The Americas, 19th Floor, New York, NY 10019
HERRICK, FEINSTEIN LLP, 2 Park Avenue, New York, NY 10016
Cozen O'Connor, 3 Wtc, 175 Greenwich Street, 55th Floor, New York, NY 10007

Andrew Borrok, J.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 101, 102, 103, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139 were read on this motion to/for DISMISS.
The following e-filed documents, listed by NYSCEF document number (Motion 003) 52, 53, 54, [*2]55, 56, 57, 58, 59, 60, 61, 62, 99, 104, 108, 140 were read on this motion to/for DISMISSAL.
The following e-filed documents, listed by NYSCEF document number (Motion 004) 47, 48, 49, 50, 51, 100, 124 were read on this motion to/for DISMISSAL.
The following e-filed documents, listed by NYSCEF document number (Motion 005) 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 165, 167, 168, 169, 187, 188, 189 were read on this motion to/for DISCOVERY.
The following e-filed documents, listed by NYSCEF document number (Motion 006) 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 206, 208, 209, 210, 211, 212 were read on this motion to/for DISCHARGE.
The motions to dismiss and to vacate the notices of pendency (Mtn. Nos. 002, 003, 004, and 006) are granted and this case is dismissed. The motion (Mtn. Seq. No. 005) to vacate the notices of deposition and to extend the time to respond is denied as moot.
As discussed more completely below, this lawsuit is predicated on the incorrect assertion that an "all or substantially all" sales transaction took place in violation of Business Corporation Law (BCL) § 909. The undisputed facts unequivocally demonstrate that it did not. 
BCL § 909 by its express terms does not apply to every transfer. It only applies to sales and dispositions which constitute "all or substantially all" of the assets of the selling company. The Transaction (hereinafter defined) was not a sale of "all or substantially all" the assets of Simry (hereinafter defined). It was a mere corporate reorganization and cash-out of one of two brothers' interests in Simry. To the extent that a sale of Simry's assets occurred, it was at most an indirect sale of a mere five percent of the beneficial interest in Simry's assets. A five percent sale is not an "all or substantially all" sales transaction under BCL § 909. As discussed below, the Transaction was not even that.[FN1]

To wit, before the Transaction, Michelle Haruvi (Plaintiff), her sister Aileen Haruvi and her Father Arthur Haruvi beneficially owned 50% of the Properties. Abe Haruvi (Arthur's brother and Michelle's Uncle), beneficially owned the other 50% of the Properties. After the Transaction, Abe Haruvi owned 0% of the Properties, Peter Hungerford owned at most a five percent indirect beneficial interest in the Properties and Michelle, Aileen and Arthur 
owned the rest of the beneficial interests in the Properties. Before the transaction, Simry was engaged in the real estate business through its ownership of the Properties and after the Transaction, Simry remained in the real estate business indirectly owning exactly the same Properties (albeit without Abe as a partner) as permitted by Simry's Certificate of Incorporation. Any argument to the contrary puts form over substance and thus fails. Thus, because no "all or substantially all" transaction occurred, and the lawsuit is predicated on such sale, the lawsuit is dismissed. 
To the extent that Michelle argues that she learned of the Transaction "only after it occurred" and "never had an opportunity to discuss the Trans[action] (before it occurred) with the other shareholders of Simry" (NYSCEF Doc. No. 2 ¶¶ 31-34), these assertions are at best hyberbole.
Michelle's own communications demonstrate unequivocally that she firmly understood that the Transaction included (i) a cash-out of her Uncle Abe's 50% beneficial interest in the Properties, (ii) that Abe was looking to receive $80 million, (iii) the Transaction involved refinancing, (iv) that Peter was to be involved in the operation and management of the Properties and (v) that she did in fact discuss the same with the other shareholders of Simry and that she had an understanding of when the closing was to occur (before it happened) (see, e.g., NYSCEF Doc. Nos. 37, 112-114 and 136). 
For completeness the Court notes that Michelle's Affidavit submit in Reply (NYSCEF Doc. No. 125) in sum and substance indicates that the certain of the text messages submitted by the defendants are being taken out of context, in that they refer to a 2021 financing (when she signed a Unanimous Written Consent of Officers and Directors and Majority of Shareholders, dated October 18, 2021 [NYSCEF Doc. No. 131])[FN2]
and not a 2022 financing, and that she did not understand that the Transaction included a corporate reorganization to effectuate the cash-out of Abe. As discussed,
this is however irrelevant because, at most, a five percent indirect beneficial interest in Simry's assets was sold (to Peter), Michelle understood the sum and substance of the Transaction which included the cashing out of Abe's entire 50% beneficial interest in the Properties and the refinancing, and Simry remains in the real estate business as permitted by its Certificate of Incorporation (NYSCEF Doc. No. 35) such that no sale "of all or substantially all the assets" outside of its normal course of business occurred. [FN3]
 The Relevant Facts and Circumstances
In this lawsuit, the Plaintiff alleges that the Defendants violated BCL § 909 (NYSCEF Doc. No. 2, ¶ 34), and as such Plaintiff was deprived of her rights under BCL § 623 (id.) such that Plaintiff is entitled to have certain transactions rescinded. 
As discussed above, the transactions which are alleged are straight forward and the facts are not in dispute. Arthur and Abe Haruvi were two brothers in the real estate business. Abe owned 50% of the business and Arthur owned 14.5373% directly and his two daughters, Aileen and Michelle, each owned approximately 17.73135% (i.e., collectively 50%).[FN4]
The properties (the Properties) themselves were owned by a company called Simry Realty Corp. (Simry).
According to Simry's Certificate of Incorporation, Simry was in the business of owning either directly or indirectly interests in real estate:
The purposes for which this corporation is formed, are as follows, to wit: . . . To take, buy, exchange, lease or otherwise acquire real estate and any interest or right therein, and to hold, own operate, control, maintain, manage and develop the same and to construct, [*3]maintain, alter, manage and control directly or through ownership of stock in any other corporation any and all kinds of buildings, stores, offices. . .
(NYSCEF Doc. No. 35, at 1 [emphasis added]).
There came a time when the brothers (Abe and Arthur) decided to restructure Abe's involvement in the business — i.e., to cash Abe out.Abe was looking for $80 million. 
Michelle was firmly aware of this and communicated directly with Abe about his desire to cash-out at that price (NYSCEF Doc. 114). Among other things, and to facilitate the Transaction, pursuant to an Irrevocable Proxy and Voting Agreement (NYSCEF Doc. No. 39), dated May 13, 2022, by and among Abe, Arthur, and Simry, Abe granted Arthur proxy rights to vote all of Abe's share in Simry. As such, Arthur could vote 64.5373% of the common stock in Simry.[FN5]
Additionally, the Properties needed cash for capital improvements and to refinance certain debt coming due. To finance Abe's cash-out, the refinancing of the Properties, and the capital improvements, the brothers made a deal with Peter Hungerford and restructured the Properties into single-member LLCs and took down a new loan (collectively, the Transaction). Michelle also had actual notice that a deal was being made with Peter and that the Properties needed to be refinanced both because debt was coming due and that additional cash was needed for capital improvements (NYSCEF Doc Nos. 113-114).
To wit, single-member LLCs were formed to own the Properties that were owned by Simry. Simry transferred the Properties it owned to the single-member LLCs. The limited liability company interests in the single member LLCs were transferred to newly-formed Simry Holding LLC (Simry Holding; NYSCEF Doc. No. 2, ¶¶ 24, 43). In exchange, Simry received a 10% common interest and 100% preferred interest in Simry Holding (NYSCEF Doc. No. 98, at 10). The remaining 90% common interest in Simry Holding is owned by non-party Jade Venture Partners LLC (Jade Venture) (NYSCEF Doc. No. 2, ¶ 43). Jade Venture is 95% owned by Jade Realty Partners LLC (Jade Realty) (id.). Jade Realty is owned by Arthur Haruvi, who holds a portion of this interest as nominee for the Plaintiff (NYSCEF Doc. No. ¶¶ 39-40).[FN6]
The portion of this interest so held is "equal to [Plaintiff's] percentage interest in Simry multiplied by the value of Jade Ventures attributable to its ownership in Simry Holding" (NYSCEF Doc. Nos. 2, ¶ 39; 5, at 2). Thus, Michelle's interest in Jade Realty which owns 95% of Jade Ventures which in turn owns 90% of the common interest in the Simry Holding is equal to exactly the interest she holds in Simry and Michelle's beneficial interest in the Properties is thus preserved.[FN7]

The remaining five percent interest in Jade Venture (i.e., the only interest in the Simry's assets (i.e., the Properties) now-post Transaction not beneficially owned by Michelle, Arthur and Aileen and sold in the Transaction) is owned by PH Realty LLC (PH Realty), which is owned [*4]by Peter (NYSCEF Doc. No. 5, at 2).[FN8]

In other words, whereas before the Transaction 50% of the Properties was beneficially owned by Abe (i.e., and not Plaintiff Michelle, her Sister Aileen or her Father Arthur), after the Transaction at most five percent of the Properties was sold and is beneficially owned by Peter. The rest of the beneficial interests in the Properties are now owned by Plaintiff Michelle, her Sister Aileen and her Father Arthur. And, as discussed above, Simry remains in the real estate business in a manner contemplated by its Certificate of Incorporation.
The documentary evidence firmly establishes that Michelle had actual notice 
of (i) Abe's cash out at approximately $80 million, (ii) the need for refinancing in 2021 and (iii) Peter's future involvement in management. For example, on February 12, 2021, Peter sent the following email which was forwarded to Michelle:
The Dropbox Folder has been updated with a proposed sources and uses as well as a more detailed construction budget. To be clear, these are all working documents.
Here is an overview which I would comfortably share with lenders: Beginning in the 1960's, Jack (name?) Haruvi began amassing The Haruvi Portfolio. Although he passed away in the 1990's (year?) the Portfolio has been carried on by his two sons, Arthur and Abe. For the last 30 years the Portfolio has been managed by a family management office in Manhattan and a small outpost in Florida. The current owners of the Portfolio are Arthur (50%) and Abe (50%). For various estate planning and multi-generational reasons, the brothers wish to separate their holdings and specifically Abe would like to cash out and Arthur would like to maintain control over the real estate. For the last three years, Peter Hungerford of PH Realty Capital has been discussing with both brothers various solutions and exit strategies such that Abe can receive cash, Arthur can receive buildings, and the tax liabilities are minimized. Furthermore, as an experienced owner-operator of value-add multifamily real estate, Hungerford brings expertise in improving the operations and profitability of the 31 buildings and 502 units in the Portfolio. Today, Arthur Haruvi and Peter Hungerford are seeking a $165,000,000 mortgage which will allow them to refinance the current loan ($53M), buy out Abe Haruvi ($80-$85M), cover closing costs ($7M), escrow/reserves ($5M) and all capital improvements ($19M) necessary to bring the buildings and the interior conditions into the next chapter of The Haruvi Portfolio.
Please let me know if you need anything else at all Rab. I look forward to any conversations you are able to facilitate (NYSCEF Doc. No. 113 [emphasis added]). 
Between November 4, 2021, and November 10, 2021, Michelle sent the following text messages to her Uncle Abe which demonstrate that she was represented by counsel and that she had a firm understanding of Abe's desire to be cashed out at $80 million, that Peter was to be involved in managing the Properties and that she did in fact discuss the substance of the Transaction with the other shareholders of Simry:
You should have received an email from my attorney, Jennifer. She spotted a mistake with the Simry share allocations early last month and she was waiting until the loan closed to correct it. Let us know if you have any questions about.
Peter knows that it would be years before he could offer you anywhere close to 80M. His only viable play is to distress the portfolio, take over all control and continue squeezing you and my family. Don't trust him. He's already shown you who he is. And I'm not signing up for that plan. We can use him as long as we need to but giving him full reign is a mistake. If the business was at a place where we could afford to buy you out for 80M I would be the first one on board. That's why I got involved in the first place back in January. But when I figured out that according to the lenders/market we could only give you 30-40M, I knew something was very wrong with what these guys are doing.
Stepper is completely out of line and offensive, as usual. I'm not spending another dollar for my counsel to speak to or deal with him. Interesting that you would risk being able to join with me, gaining control and veto power over Simry, and starting on a path out of this disaster for the less than 1% chance that Peter can get you what you want. I've been nothing but upfront with you — something Peter's never done with any of us. If you won't give me the chance to help you and help save the business then my only priority now is to save my own interest, as per my counsel's advice. I've held off on these other options because they will not benefit anyone else. I can't sit powerless on a sinking ship with a "manager" who wants to buy the business at a discount. Good luck dealing with them all
(NYSCEF Doc. No. 114 [emphasis added]). 
Between February 1, 2022 and April 22, 2022, Michelle sent the following text messages to Aileen, again affirming her representation by counsel and affirming that that she had an understanding of when the closing was to occur (before it happened):
Sent Feb 1, 2022 11:57:09 AM
Hey, I was wondering if you're OK with the share allocation correction. It was a mistake that just needs to be corrected.
(NYSCEF Doc. No. 135).                                                                                 . . .
Sent Mar 16, 2022 8:30:41 AM
OK, thanks again. Jennifer can send them information from her communications with Bruce over the last few months. Based on her conversations with Bruce she has a few recommendations. She's a corporate attorney and very good. 
(NYSCEF Doc. No. 115).
                                                                                    . . .
Sent Apr 22, 2022 1:28 PM
BTW, Abe texted me and says Peter has until the 25th to close. What's the new deal? (NYSCEF Doc. No. 37 [emphasis added]).
On March 3, Michelle sent the following text to Abe regarding the assignment of stock interests:
Sent Mar 3, 2022 5:41:12 PM
I hope you are doing well and hanging in there. I know you are dealing with a lot. Will you consider signing both mine and Aileen's share allocation correction? Aileen will not let my dad sign off if she's not included and will cause unnecessary drama. And then I would love to hear your ideas for moving forward together. My position hasn't changed and I believe only together with can save the business from the parasites.
(NYSCEF Doc. No. 136).
Michelle brought this lawsuit against (i) Arthur and the officers and directors of Simry (other than Michelle; collectively, hereinafter, the Haruvi Defendants), (ii) each of the single-member property LLCs (the Property Defendants), (iii) FS CREIT Finance Holdings LLC and its affiliates (the Lender), (iv) Peter, and (v) Simry as nominal defendant (NYSCEF Doc. No. 2, ¶¶ 4-17) asserting causes of action for (1) rescission of the Transaction or, alternatively, for money damages (asserted derivatively against the Haruvi Defendants) (first and second causes of action), (2) breach of fiduciary duty (asserted derivatively and directly against the Haruvi Defendants) (third and fifth causes of action), (3) an accounting (asserted derivatively against the Haruvi Defendants) (fourth cause of action), (4) aiding and abetting breach of fiduciary (asserted derivatively and directly against Peter) (sixth and seventh causes of action), (viii) quiet title to the Properties pursuant to RPAPL Article 15 (asserted derivatively against the Property Defendants and the Lender) (eighth cause of action), and (ix) slander of title (asserted derivatively against the Haruvi Defendants, the Property Defendants, and Peter) (ninth cause of action).
As discussed above, in her verified complaint, Michelle alleges that the Transaction was done without notice, behind her back and without her knowledge, and that she was deprived of her rights under BCL § 623:
25. The Transfer was not in the ordinary course of Simry's business.
31. Plaintiff learned about the Transfer only after it occurred.
32. As a direct and proximate result of the Transfer taking place behind Plaintiff's back, Plaintiff never had an opportunity to discuss the Transfer (before it occurred) with the other shareholders of Simry, never had an opportunity to learn about the Transfer (before it occurred) and determine whether it was in the best interests of Simry, never had an opportunity to vote on the Transfer (before it occurred) and formally dissent to the Transfer, and was deprived of her appraisal rights under New York Business Corporation Law ("BCL") §§ 623 and 910, the provisions of both of which are incorporated by reference herein and made a part hereof.
33. As Plaintiff was at all relevant times a voting shareholder of Simry and was not notified of and did not have an opportunity to vote on the Transfer before it occurred, and as Plaintiff was not given an opportunity to learn about and discuss the Transfer, which occurred behind Plaintiff's back, the Transfer did not take place in accordance with the strict procedures set forth in and mandated by BCL § 909, the provisions of which are incorporated by reference herein and made a part hereof.
34. As a direct and proximate result of the aforesaid violation of BCL § 909, Plaintiff was deprived of her rights under BCL §§ 909 and 623

 (NYSCEF Doc. No. 2, ¶¶ 25, 31-34). 

 Discussion

On a motion to dismiss, the pleading is to be afforded a liberal construction, and the court is to accept the facts as alleged as true, accord the non-moving party the benefit of every favorable inference, and determine only whether the facts alleged fit any cognizable legal theory (Leon v Martinez, 84 NY2d 83, 87-88 [1994]). Pursuant to CPLR 3211(a)(1), dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law (id.). Pursuant to CPLR 3211(a)(7), the court may freely consider affidavits submitted by the plaintiff (id.). The court looks to whether the plaintiff has a cause of action, not whether they have stated one (id.). 
Pursuant to CPLR 3211(c), Michelle has requested that the Court convert the Haruvi Defendants' motion to dismiss (Mot. Seq. No. 002) to a motion for summary judgment as to her first and eighth causes of action (rescission and quiet title, respectively). As such, consideration of all of the documents in the record is appropriate. 
I. The Transaction was not a sale of "all or substantially all" of Simry's assets
BCL § 909(a) provides that a "sale, lease exchange, or other disposition of all or substantially all the assets of a corporation, if not made in the usual or regular course of the business actually conducted by such corporation, shall be authorized only" if the board of the corporation authorizes the sale and directs its submission to a shareholder vote, notice of meeting is given to shareholders of record, and two-thirds of the shareholders approve the sale (BCL § 909[a][1]-[3] [emphasis added]). Thus, BCL § 909's requirement that a transaction be authorized by the board of a corporation and approved by two-thirds of the shareholders is not triggered when a particular transaction does not constitute a sale "of all or substantially all" of a corporation's assets, or such a sale is in the normal course of that corporation's business. As discussed above, the Transaction was not a sale "of all or substantially all" of Simry's assets.
"The purpose of [BCL § 909] was to prevent a corporation from disposing of a major portion of its property without obtaining prior approval of its shareholders" (Dukas v Davis Aircraft Products Co., Inc., 131 AD2d 720, 721 [2d Dept 1987]). Here, there has been no such disposal. As discussed above, before the Transaction, Simry's assets were 50% beneficially owned by Arthur, Michelle and Aileen and 50% were beneficially owned by Abe. Simry was in the business of owning the Properties. The Transaction involved a corporate reorganization and a cash-out of Abe's 50% interest. Not a sale. In fact, as discussed above, the only "sale" that took place was a sale of at most an indirect five percent beneficial interest to Peter, and Simry continues to be in the real estate business (albeit indirectly and in a manner authorized by its Certificate of Incorporation) following the corporate reorganization. Indeed, Aileen, Michelle and Arthur's collective beneficial interest in Simry's assets (i.e., the Properties) went up, not down. Thus, the transfer of Properties from Simry to companies that Simry and its principals own (including Michelle) does not constitute a sale of "all or substantially all" of Simry's assets because the reorganization "did not result in a liquidation, in whole or in part" of the directly or indirectly owned Properties (Matter of Resnick v Karmax Camp Corp., 149 AD2d 709, 710 [2d Dept 1989]). 
Notwithstanding the foregoing, Michelle urges this Court to put form over substance and hold that BCL § 909 must be strictly construed and that it has been violated. In support of her argument, she relies on, among other things, Barasch v Williams Real Estate Co., Inc. 33 Misc 3d 1219[A] (Sup Ct, NY County 2011), affd 100 AD3d 562 (1st Dept 2012). The argument fails.
Simply put, Barasch is inapposite. The respondents in Barasch explicitly recognized, in [*5]notices sent that the transaction at issue in that case constituted "a sale of all or substantially all" of the assets and never argued that transaction was carried out in the normal course of business (id., at ** 4-5). In addition, and significantly, the transaction in Barasch resulted in the sale of 65% of the business to a third party (id., at * 5). As discussed above, although at most five percent of Abe's 50% interest was sold to Peter (a third party), there simply has been no sale of "all or substantially all" of the assets of Simry beneficially owned by Michelle, her Sister Aileen and her father, Arthur. 
Equally importantly, and unlike in Barasch, the documents firmly establish that Michelle understood (i) that the Transaction included a cash-out of her Uncle Abe's 50% beneficial interest in the Properties, (ii) that Abe was looking to receive $80-85 million, (iii) the Transaction involved refinancing, (iv) that Peter was to be involved in the operation and management of the Properties and (v) that she did in fact discuss the same with the other shareholders of Simry and that she had an understanding of when the closing was to occur (before it happened) (see, e.g., NYSCEF Doc. Nos. 37, 112-114 and 136). This was the 
substance of the Transaction. 
It is simply not so that the Michelle did not have actual notice of the substance of the Transaction and that she could not, if appropriate, assert any rights under the BCL prior to the Transaction's consummation. Thus, her assertion in her Reply Affirmation (NYSCEF Doc. No. 125) that she did not understand that the Transaction included the drop down of the Properties from Simry to the single member LLC Property Defendants is immaterial and would amount to putting form over substance — not a failure to strictly construe the requirements of BCL § 909.
In addition, it is also not correct that "as a matter of law," the Transaction was outside Simry's usual or regular course of business because Simry managed these assets directly pre-Transaction. New York courts typically find the purposes stated in a corporation's certificate of incorporation relevant to a determination of what constitutes that corporation's normal or usual course of business (Soho Gold, Inc. v 33 Rector St. Ltd., 227 AD2d 314, 315 [1st Dept 1996]; Posner v Post Rd. Dev. Equity L.L.C., 253 AD2d 866, 867 [2d Dept 1998]). As discussed above, Simry's purpose set forth in its Certificate of Incorporation included both direct and indirect ownership (NYSCEF Doc. No. 35, at 1). Thus, BCL § 909 was not violated, and the Transaction is not subject to rescission or a claim for money damages. For the avoidance of doubt, and as discussed above, the Court notes that Michelle also firmly understood that the day-to-day management of the Properties would be conducted by companies other than Simry. Thus, the first and second causes of action for rescission or, alternatively, money damages, are dismissed.
Because Plaintiff Michelle's breach of fiduciary claims (third and fifth causes of action) and accounting claim (fourth cause of action) are predicated on a BCL § 909 violation, they too must be dismissed.[FN9]

II. The Lender FS CREIT is entitled to dismissal as a bona fide encumbrancer for value
The Lender too is entitled to dismissal of this lawsuit. As there has been no BCL § 909 violation, the transaction is not void. A bona fide encumbrancer for value is protected in its title, absent notice of the fraudulent intent of its immediate grantor (Real Property Law § 266). The [*6]complaint does not allege any actionable fraudulent intent on behalf of the Lender. As such, the Lender is a bona fide encumbrancer for value of the Properties and is entitled to dismissal (Real Property Law § 266).
Although Michelle is correct that Bear Pond Trail, LLC v Am. Tree Co., Inc., 61 AD3d 1195, 1196 (3d Dept 2009) does stand for the proposition that a transaction made in violation of BCL § 909 is void and not voidable, Bear Pond too is inapposite. That case involved a sale of "all or substantially all" of the assets and the transaction was made without the consent or involvement of the minority shareholders. As discussed above, this was not an "all or substantially all" of the assets transaction and the documentary evidence firmly establishes that Michelle was aware of the substance of the Transaction.
For completeness the Court notes that M.L.C. Constr., Inc. v Hui Ru Zhang, 162 AD3d 410, 411 (1st Dept 2018) also does not suggest a different result. In that case, the Appellate Division affirmed the trial court denial of the defendant purchaser's motion for summary judgment and dismissal of the complaint where the purchasers argued that the certificate of incorporation did not prohibit the corporation from selling real estate and where the minutes of the board meeting reflected that the Board would purchase for construction and resale 526-630 Logan Avenue, holding that there were issues of fact as to whether the disposition of the home was in the usual and regular course of the corporation's business and whether such sales constituted a sale of or all substantially all of the corporation's assets. As discussed above, this case presents no such factual issue. Here, unlike in that case, no third party sale occurred of "all or substantially all" of Simry's assets. In addition, here, unlike in that case, the certificate of incorporation expressly provides for indirect ownership of real estate. Thus, Michelle's eighth cause of action for quiet title to the Properties is dismissed.
III. Peter Hungerford is entitled to dismissal because there has been no BCL § 909 violation, and because he is not liable in his individual capacity
According to the complaint, in sum and substance, Peter planned meetings, met with attorneys, engaged in negotiations, otherwise signed documents related to the Transaction and acquired, at most, five percent of the 50% beneficial ownership interest in the Properties that was previously owned by Abe. This fails to state a cause of action because inasmuch there is no actionable breach of fiduciary duty claim, there can be no aiding and abetting fiduciary duty claim (OFSI Fund II, LLC v Can. Imperial Bank of Commerce, 82 AD3d 537, 540 [1st Dept 2011]).[FN10]
Thus, the sixth and seventh causes of action are dismissed. 
The ninth cause of action is also dismissed. To plead a cause of action for slander of title, a plaintiff must allege (i) a communication falsely casting doubt on the validity of complainant's title, (ii) reasonably calculated to cause harm, and (iii) resulting in special damages (39 Coll. Point Corp. v Transpac Capital Corp., 27 AD3d 454 [2d Dept 2006]). Here, the alleged false statements is predicated on the Transaction being void. As discussed above, it was not void. As such, the claim of slander of title fails. In addition, the Court notes that dismissal of this cause of action as against Peter is required because the complaint fails to allege [*7]facts demonstrating malicious intent (Vollbrecht v Jacobson, 40 AD3d 1243, 1247 [3d Dept 2007]). 
Finally, Peter is not liable in his personal capacity. It is simply immaterial that Peter was authorized to sign documents on behalf of Simry or other entities to effectuate the Transaction (NYSCEF Doc. No. 2, ¶ 89). Lawyers and other professionals are often authorized to execute documents on behalf of companies. This does not make them liable in their individual capacity and he did not sign documents in his individual capacity. Nor is he alleged to have used or abused the corporate form to perpetrate a fraud or other actionable wrongful act. Thus, the lawsuit is dismissed as against Peter.
The Court has considered Michelle's remaining arguments and finds them unavailing.
Accordingly it is hereby ORDERED that the motions to dismiss (Mtn. Seq. Nos. 002, 003, 004) are granted with prejudice; and it is further
ORDERED the motion to cancel the notices of pendency (Mtn. Seq. No. 006) is granted; and it is further
ORDERED that the motion (Mtn. Seq. No. 005) to vacate the notices of deposition and to extend time to respond to Plaintiff's First Notice for Discovery is denied as moot.
DATE 1/16/2024
ANDREW BORROK, J.S.C.

Footnotes

Footnote 1: See fn. 8.

Footnote 2: As of October 18, 2021, Michelle owned 15.35%, Aileen owned 15.35%, Arthur owned 19.3% and Abe owned 50% (NYSCEF Doc. 131).

Footnote 3: To be clear, following the transaction the only beneficial interests in the Properties not owned by Michelle (Plaintiff), her sister and her father is the five percent indirect beneficial interest owned by Peter in Jade Venture which owns 90% of common interests in the company which beneficially owns Simry's assets. Before the transaction, 50% of Simry's Assets was beneficially owned by her Uncle Abe.

Footnote 4: It appears (NYSCEF Doc. No. 113) that Abe and Arthur each owned 50% and then Arthur did certain estate planning transferring a portion of his 50% interest to his two daughters, Aileen and Michelle, the Plaintiff.

Footnote 5: Indeed, Aileen and Arthur (with Abe's proxy to vote Abe's shares to effectuate the purchase of Abe's interest) could vote 82.27% of all of the stock of Simry.

Footnote 6: Although Michelle calls the Nominee Agreement a "sham," Michelle concedes it was signed by Arthur and, as such, it is binding against him. 

Footnote 7: In her opposition papers, Michelle does not dispute this.

Footnote 8: Indeed, inasmuch as this five percent is in Jade Ventures which owns 90% of the common interests in Simry Holding, it appears that the "sold" beneficial interest in Simry's assets is approximately four and half percent (not accounting for the 100% preferred interest retained by Simry which may further dilute this "sold" indirect beneficial interest).

Footnote 9: To the extent that Michelle may have claims for breach of fiduciary duty or accounting in Simry in which she is a shareholder other than based on a BCL § 909 violation, the dismissal is not with prejudice as to any such claims.

Footnote 10: As indicated above, inasmuch as Michelle may have breach of fiduciary duty claims not predicated on a BCL § 909 violation, the aiding and abetting breach of fiduciary duty claims too are dismissed without prejudice.